# NEWPORT  COUNTY.

EDWARD  W.  HOWLAND  *vs.*  SCHOOL  DISTRICT  No. 3  OF  LITTLE COMPTON.

Under Gen. Stat. R. I. cap. 53, § 5, Pub. Stat. R. I. cap. 56, § 5, the school committee, after the school district has voted to erect a school-house, may appoint appraisers of the land fixed upon by the committee for the location of the school-house, but cannot appoint appraisers before the district has so voted.

A vote by the district to locate is not a vote to erect.

The district has no power to locate; this must be done by the committee.

A delegated power of condemning property must be exercised strictly in accordance with the terms of its delegation.

Pub. Stat. R. I. cap. 56, § 5, does not imperatively require that the location of a district school-house shall be fixed by the school committee before the district votes to build the school-house.

Hence proceedings to condemn land for a school-house cannot be quashed because the district's vote preceded the school-committee's location.

The record of a district meeting stated that the meeting "was duly notified by posting two notices of the time, place, and object of said meeting in the district for five days previous to the day of meeting." The notice for the meeting gave the time, place, and object of the meeting, was dated six days before the meeting, and was signed by the trustee.

*Held,* that, under Pub. Stat. R. I. cap. 58, § 11, the record was *primâ facie* evidence of a valid meeting.

On a motion to quash proceedings, only defects apparent on the record can be considered.

TRESPASS AND EJECTMENT. Heard by the court, jury trial being waived.

*Providence, December* 10, 1885. DURFEE, C. J. This is trespass and ejectment for a lot of land in Little Compton, which it is admitted belongs to the plaintiff unless the defendant has acquired title by taking it for a school-house lot under Gen. Stat. R. I. cap. 53, § 5,[1] being the same as Pub. Stat. R. I. cap. 56, § 5. We think that § 5, though not quite clear in all respects, is clear in this respect, namely, that, where a town has a district organization, the school committee is authorized to appoint appraisers to decide upon the value of land fixed upon by the committee as the site of a school-house in any district, after the district has voted to erect a school-house, no authority to make the appointment being given until after such vote. It follows that in such a case an appointment before the vote is unauthorized and void, and consequently that any valuation of the land by the appraisers, so appointed, and any tender to the owner in pursuance thereof, are ineffectual

---

[1] As follows : —

Gen. Stat. R. I. cap. 53, § 5 :

"In case the school committee shall fix upon a location for a school-house in any district, or shall determine that the school-house lot shall be enlarged, and the district shall have passed a vote to erect a school-house, or to enlarge the school-house lot, or, in case there is no district organization, and the committee shall fix upon a location for a school-house and the proprietor of the land shall refuse to convey the same, or cannot agree with the district for the price thereof, the school committee, of their own motion, or on application of the district, shall be authorized to appoint three disinterested persons, who shall notify the parties and decide upon the valuation of the land; and upon the tender or payment of the sum so fixed on to the proprietor, the title to the land so fixed on by the school committee, not exceeding one acre, shall vest in the district for the purpose of maintaining thereon a school-house, and the necessary appendages thereof."

to divest the title of such owner and vest it in the district. We think the proceeding under which the defendant claims is defective in this particular. The records of the defendant district and of the school committee, copies of which were put in evidence at the trial, show that the proceeding was as follows, to wit: A meeting of the district was held, April 14, 1875, for the purpose, among other things, of "considering the expediency of building or repairing the school-house in said district." At the meeting it was voted " to *repair* the school-house," and that " Charles Staples hire money for the present use, if needed, for the *repairs* of the said school-house." Subsequently a special meeting was notified for May 22, 1875, " for the purpose of taking such measures as may be deemed necessary for the location of a district school-house." At the meeting held pursuant to this notice it was voted " that we locate the district school-house on the ground of the old school-house," and " that the trustee petition the school committee to lay out a lot of a suitable size for a district school-house." Under the latter vote the trustee petitioned the school committee, which was in session the same day, " to locate a site for a district school-house for district No. 3." The school committee, acting on this petition, fixed upon the old school-house lot, being the lot in suit, and defined its bounds. An attempt was then made to agree with the plaintiff as owner, which failed. Thereupon, on application of the trustee, the school committee appointed appraisers who valued the land at $45. Upon their report the district voted to tender the $45 to the plaintiff as owner, which was done June 10, 1875.

The recital shows no vote of the district to erect a school-house. There is no proof of any such vote prior to the appointment of the appraisers. Possibly it may be thought that the vote to locate implies a vote to erect, and is therefore equivalent to it. We do not think so. The vote to locate was, in point of law, a mere nullity, the power to locate being in the school committee. The vote was merely an expression of preference. The statute contemplates that the selection of the site shall precede the vote to build. Moreover, it does not appear that the district ever supposed or claimed that the vote to locate was equivalent to a vote to erect. On the contrary, the record shows that at a special meeting of the

district, August 27, 1875, held pursuant to notice, " for the purpose
of considering the question of building or repairing the district
school-house," it was voted " to recede from repairing the old
school-house," and " to build a new school-house." The inference
is that the district then considered the vote to repair as still in
force, and that the vote to build still remained to be adopted. It
is hardly necessary to say that if the appraisal was unauthorized,
and consequently void, when made, for want of a precedent vote
to build, this subsequent vote was without effect, as against the
plaintiff at least, to ratify or confirm it. The power to take prop-
erty *in invitum* is a sovereign power, and, when delegated, must
be exercised in strict conformity with the terms of its delegation,
or otherwise the exercise will be invalid. Cooley on Constit.
Limit. *528–530.

*E. L. Barney & Charles Acton Ives*, for plaintiff.
*Ziba O. Slocum*, for defendant.

After the above decision, the district instituted new proceedings
to condemn for school purposes the lot in question. From this con-
demnation Howland appealed to the Court of Common Pleas for
the County of Newport, at its May Term, A. D. 1886. The
Court of Common Pleas, on motion of the appellant, quashed the
proceedings of condemnation, and the school district, the appellee,
brought its exceptions into this court.

EXCEPTIONS to the Court of Common Pleas.
*Providence, February 5*, 1887. DURFEE, C. J. This is an
appeal from proceedings instituted by School District No. 3, in
Little Compton, to acquire by condemnation a lot of land in said
district belonging to the appellant Howland, for the erection of a
public school-house thereon. The appeal was taken to the Court
of Common Pleas, and comes here on exceptions. At the trial in
the court below, the district put in the record of its proceedings and
rested. The appellant moved to quash the proceedings, on the
ground that they do not show a legal condemnation. The court
granted the motion, because it appears by the record that the vote
of the district to build the school-house preceded the selection of
the site by the school committee, the court being of opinion that
the selection must precede the vote.

The statute, Pub. Stat. R. I. cap. 56, § 5, provides that, " in case the school committee shall fix upon a location for a school-house in any district, . . . and the district shall have passed a vote to erect a school-house," then, if the owner of the lot selected shall refuse to convey it, or cannot agree for the price of it with the district, the committee shall appoint appraisers who shall determine the price to be paid, and that upon tender or payment thereof the title of the lot shall vest in the district.   The statute does not expressly provide that the selection of the site shall precede the vote to build, but only that the selection and vote shall both precede the steps next to be taken.   In the former case between the parties to this proceeding the court remarked, *ante*, p. 186 : " The statute contemplates that the selection of the site shall precede the vote to build."   The remark was an inference from the order in which the two acts are mentioned, and from the supposition that a district, before voting to build a school-house, would naturally like to know where it is to stand when built. We see no reason to retract the remark ; but it does not follow, because it may be inferred that a particular order of procedure is contemplated, that it is therefore commanded ; and unless we can find that the order is in effect commanded, we cannot hold that a deviation from it is fatal, so long as the statute is literally complied with.   The question then is, not whether the statute contemplates, but whether it imperatively requires, that the selection of the site shall precede the vote to build.   The General Assembly knew, of course, when the statute was enacted, that its execution would often devolve on plain men, unskilled in the kind of work which it imposes, and it is therefore reasonable to suppose that they intended to express their meaning so that it would be readily understood.   But, if they had intended that the selection of the site should *necessarily* precede the vote to build, it would have been natural for them to add the word " thereon," or some equivalent expression, after the words " erect a school-house."   The word or expression may have been omitted because such was not their intention.   We see nothing to warrant our making the addition by construction.   Our conclusion is that the court below erred in quashing the proceeding for the reason assigned.

The appellant contends that the proceeding, if not void for the

reason assigned by the court below, is void and ought to be quashed for other reasons, to wit, because it does not appear that the notices given of the district meeting were posted in such public places as the law requires, or that they conformed to the law; and because the record does not show at what hour the meeting was held. We do not discover any fault in the notice as recorded in point of form. It is in the form given in the Rhode Island School Manual. It states the time, place, and purposes of the meeting. It bears date six days before the meeting notified, and is signed by the trustee. It meets the requirement of the statute. Pub. Stat. R. I. cap. 52, §§ 3, 5.[1] The record does not state specifically how or where the notices were posted, but states that the meeting " was duly notified by posting two notices of the time, place, and object of said meeting in the district for five days previous to the day of meeting." It may be questionable if this statement would be sufficient at common law, but our statute, Pub. Stat. R. I. cap. 58, § 11, provides, " The record of the district clerk that a meeting has been duly or legally notified shall be *primâ facie* evidence that it has been notified as the law requires." We think the statement is *primâ facie* sufficient under this provision. The record does not state in express terms at what hour the meeting was held, but it describes the meeting as that which was notified, and the notice appoints the hour. A meeting held at any different hour would not be the meeting which was notified. We do not think the record is fatally defective in this respect.

The appellant contends that the proceedings should be quashed

[1] As follows:—

" SECT. 3. The trustees may call a special meeting for election or other business at any time, and shall call one to be held within seven days on the written request of any five qualified electors stating the object for which they wish it called; and if the trustees neglect or refuse to call a special meeting when requested, the school committee may call it and fix the time therefor."

" SECT. 5. Notice of the time and place of every annual meeting, and of the time, place, and object of every special meeting, shall be given, either by publishing the same in a newspaper published in the district, or by posting the same in two or more public places in the district for five days before holding the same."

The meetings spoken of in this opinion were holden before the enactment of Pub. Laws R. I. cap. 579, of April 30, 1886, but of course subsequent to that of Pub. Laws R. I. cap. 455, of May, 29, 1884.

because there is no record of any vote to build on the lot located by the school committee. This merely raises in another form the question which we have first decided. The statute does not require a vote to build on the lot located, but, as we have seen, only requires a location of the lot by the committee, and a vote to build a school-house by the district, as a prerequisite to subsequent proceedings.

A motion to quash can be granted only for defects apparent on the record. We can know nothing of defects or errors which may be brought to light by the evidence. We do not think the proceeding should be quashed for any defect pointed out by the appellant.                                 *Exceptions sustained.*

*E. L. Barney*, for appellant.
*Ziba O. Slocum*, for appellee.